UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ERIC KELLEY,<br><br>    Plaintiff,<br><br>v.<br><br>RICHARD REYES, LORI HILLAS AS EXECUTOR OF THE ESTATE OF LOUIS STELL, ROBERT SMITH, ESTATE OF MICHAEL FINER, ALEX NIEVES, PETER IURATO, TIMOTHY JORDAN, RAYMOND REID, ALBERT CLARK, in their individual capacities, RICHARD MUNSEY and VINCENT AMORESANO, in their official capacities, and THE CITY OF PATERSON,<br><br>    Defendants. | No. 2:19-cv-17911 (WJM) |
| RALPH LEE,<br><br>    Plaintiff,<br><br>v.<br><br>ALBERT CLARK, ESTATE OF MICHAEL FINER, PETER IURATO, TIMOTHY JORDAN, ALEX NIEVES, RAYMOND REID, RICHARD REYES, ROBERT SMITH, LORI HILLAS AS EXECUTOR OF THE ESTATE OF LOUIS STELL, and JOHN DOES #1-10, in their individual capacities, RICHARD MUNSEY and VINCENT AMORESANO, in their official capacities, and THE CITY OF PATERSON,<br><br>    Defendants. | No. 2:19-cv-17936 (WJM)<br><br>OPINION |

1

**WILLIAM J. MARTINI, U.S.D.J.:**

In this civil rights action, Plaintiffs Eric Kelley and Ralph Lee, Jr. ("Plaintiffs"), Defendant Raymond Reid, and Defendant City of Paterson ("Paterson") each seek limited reconsideration of rulings issued in the Court's February 26, 2025 summary judgment Opinion and Order ("SJ Opinion"). Kelley ECF No. 292, Lee ECF No. 262 (Plaintiffs' Motions); Kelley No. 296, Lee ECF No. 266 (Reid Motion); Kelley ECF No. 298, Lee ECF No. 268 (Paterson Motion). The Court decides the motion on the papers without oral argument. Fed. R. Civ. P. 78(b). After careful consideration of the parties' submissions, and for the reasons stated below, the motions for reconsideration are **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND

The Court assumes the parties' familiarity with the underlying facts of this case and the prior decisions of the Court, and unless otherwise indicated, all facts originate from the SJ Opinion. Briefly, the Court summarizes the key facts relevant to the instant motions for reconsideration.

Plaintiffs were incarcerated for 24 years for the July 28, 1993 robbery of Victoria's Video in Paterson, New Jersey and murder of the store clerk, Tito Dante Merino—crimes that they contend they did not commit. After DNA testing in 2014 proved that the distinctive green plaid baseball hat left at the crime scene was owned by Eric Dixon, Plaintiffs moved for a new trial. The state court granted that application but specifically noted that its decision was "in no way, shape, or form" a finding as to Plaintiffs' innocence, which would still need to be determined by a jury. Thereafter, the State dismissed the indictments and did not retry Plaintiffs. In September 2019, Plaintiffs each filed separate lawsuits against Paterson and members of the Paterson Police Department in their individual capacities, raising various civil rights and related claims.

On February 26, 2025, the Court granted in part and denied in part Defendants' motions for summary judgment. Before the Court are four separate motions for reconsideration of claims against Detectives Alex Nieves, Richard Reyes, Peter Iurato, and Sergeants Raymond Reid, Louis Stell:[1]

1. Mr. Kelley's motion to reconsider and reinstate the fabricated confession claims against Reyes and Stell (Count I); the deliberate deception claims against Reyes and Reid (Count I); and malicious prosecution and state law claims against Reid (Counts III, VIII, IX, X, and XII);

2. Mr. Lee's motion to reconsider and reinstate the malicious prosecution claim (Count I) and other state law claims against Iurato (Counts III, IV, VII, IX, X, XII); the fabricated confession claim against Reyes, Stell, Nieves, and Iurato (Count II); and the deliberate deception claims against Reyes and Reid (Count II); and malicious

---

[1] Stell passed away on March 20, 2024. His estate was substituted as a party on August 26, 2025. Kelley ECF No. 307; Lee ECF No. 277.

prosecution and state claims against Reid (Counts I, VIII, IX, X, and XII);

3. Reid's motion to reconsider and grant dismissal of the remaining claims against him (Counts IV, VI, and XI);

4. Paterson's motion to reconsider and grant dismissal of all claims (Counts VII, X, XI, and XII).

## II.   STANDARD OF REVIEW

Local Civil Rule 7.1(i) governs motions for reconsideration and requires a movant to set forth "the matter or controlling decisions which the party believes the Judge has overlooked." L. Civ. R. 7.1(i). "[A] judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [made its decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Manifest injustice can occur when a matter is "overlooked," meaning that the Court did not consider "some dispositive factual or legal matter that was presented to it." *Rich v. State*, 294 F. Supp. 3d 266, 272-73 (D.N.J. 2018). Manifest injustice can also occur if the Court made a "direct, obvious, and observable" error. *Haines v. United States*, No. 22-cv-07461, 2023 WL 2540426, at *1 (D.N.J. Mar. 15, 2023).

## III.   PLAINTIFFS' MOTIONS

In their motions, Plaintiffs raise three bases for reconsideration. First, Plaintiffs argue that the Court overlooked dispositive facts and *Halsey v. Pfeiffer*, 750 F.3d 273 (3d Cir. 2014). Plaintiffs also argue that qualified immunity cannot be granted to defendants in fabricated-confession cases. Second, Plaintiffs argue that the Court misconstrued their deliberate deception claim as a failure-to-disclose claim under *Brady v. Maryland*, 373 U.S. 83 (1963), rather than a deliberate-deception claim under *Dennis v. City of Philadelphia*, 19 F.4th 279 (3d Cir. 2021). Third, Mr. Lee argues that the Court improperly granted Iurato summary judgment by overlooking facts pointing to his involvement in Mr. Lee's prosecution.

### A.   Fabrication Claims

Mr. Kelley seeks to reinstate his fabrication claim (Count I) against Reyes and Stell. Mr. Lee seeks to reinstate his fabrication claim (Count II) against Reyes, Stell, Nieves, and Iurato. At issue is whether Plaintiffs met their burden at summary judgment to show genuine issues of material fact as to whether "the defendant offered false evidence *knowingly, willfully, or with reckless disregard for the truth.*" *Hicks v. City of Phila.*, No. 22-cv-00977, 2025 WL 1448205, at *10 (E.D. Pa. May 20, 2025) (citing *Halsey v. Pfeiffer*, 750 F.3d 273, 294-95 (3d Cir. 2014) (emphasis added); *Mervilus v. Union Cnty.*, 73 F.4th 185, 194-95 (3d Cir. 2023)). Given that Reyes, Stell, Nieves, and Iurato participated in creating the confessions that contained nonpublic and inaccurate information and viewing

3

that and other evidence in the light most favorable to Plaintiffs, the Court assumed on summary judgment that the confessions were false. *See* SJ Op. 15. Nevertheless, the Court granted summary judgment finding that Plaintiffs did not offer "persuasive evidence" of "bad faith." *Mervilus*, 73 F.4th at 194-95; *Halsey*, 750 F.3d at 295 (highlighting that fabricated evidence must have been offered in bad faith and warning that "it will be an unusual case in which a police officer cannot obtain a summary judgment in a civil action charging him with having fabricated evidence used in an earlier criminal case."). Although the confession in *Halsey* also contained inaccurate and nonpublic information, *Halsey* did not dictate a different result because the question of whether the confession was *knowingly* fabricated was not at issue in that case.

However, the Third Circuit's recent decision in *Evans v. Newark City*, __ F.4th __ No. 23-1723, 2025 WL 2628093 (3d Cir. Sept. 12, 2025) is instructive as to what factual allegations and inferences support a finding of intent. In *Evans,* the court affirmed the denial of summary judgment on a malicious prosecution claim, reasoning that if a jury credits testimony that the coerced confession was false, the repeated denials of knowledge or involvement in the murders and insistence that the fabricated story was a lie was exculpatory evidence. *Evans*, 2025 WL 2628093, at *5. The omission of such evidence from the affidavit of probable cause by officers who were present during the alleged confession and repeated denials of knowledge was enough for the court to find that a reasonable jury could conclude that the officers acted with reckless disregard for the truth or even with malice. *Id.*

Guided by *Evans'* inference of intent based on such facts, the Court concludes that reconsideration is warranted here. Assuming that Plaintiffs' confessions were fabricated, a reasonable jury could believe that Reyes, Stell, Nieves, and Iurato, who were present during the alleged fabrications, typed up the confessions, signed as witnesses, or ensured that Mr. Kelley and Mr. Lee's confessions essentially matched each other, acted knowingly and deliberately or with reckless disregard for the truth. *See id.* Accordingly, given the genuine issues of material fact as to whether Reyes, Stell, Nieves, and Iurato violated Plaintiffs' constitutional right to due process, those defendants are not entitled to qualified immunity on the fabrication claims. Mr. Kelley's motion to reinstate Count I against Reyes and Stell and Mr. Lee's motion to reinstate Count II against Reyes, Stell, Nieves, and Iurato are **GRANTED.**

### B. Deliberate Deception Claims

Next, Plaintiffs move for reconsideration to reinstate their deliberate deception claims (Kelley Count I, Lee Count II) against Reyes and Reid on the grounds that the Court previously misconstrued their deliberate deception claim as a claim under *Brady v. Maryland*, 373 U.S. 83 (1963). A *Brady* claim is the contention that a defendant's "due process rights were violated by the failure to disclose exculpatory or impeachment evidence to the defense." *Dennis*, 19 F.4th at 291. Instead, a deliberate deception claim "must go beyond the failure to disclose evidence and arises when imprisonment results

4

from the *knowing* use of false testimony or other fabricated evidence or from concealing evidence to create false testimony to secure a conviction." *Id.* (emphasis in original).

Because the fabrication claim is reinstated against Reyes, the jury could find that imprisonment resulted from Reyes' knowing use of false testimony. Reconsideration and reinstatement of the deliberate deception claim against Reyes in Count I of Mr. Kelley's Complaint and Count II of Mr. Lee's Complaint is **GRANTED**.

In contrast, Plaintiffs present no facts upon which a jury could conclude that Reid, as Reyes' supervisor, knowingly used false testimony to secure a conviction. Reinstatement of the deliberate deception claim against Reid in Count I of Mr. Kelley's Complaint and Count II of Mr. Lee's Complaint is **DENIED**. Hence Plaintiffs' request that upon reinstatement of the deliberate deception claims against Reid, Counts III, VIII (malicious prosecution), IX, X, and XII (state law claims) in Mr. Kelley's Complaint and Counts I and VIII (malicious prosecution claims), IX, X, and XII (state law claims) in Mr. Lee's Complaint be reinstated against Reid is also **DENIED**.

### C. Malicious Prosecution Claim

Lastly, Mr. Lee argues that the Court improperly granted summary judgment to Iurato on his malicious prosecution claim (Count I). A Fourth Amendment malicious prosecution contains five elements: (1) a defendant initiated a criminal proceeding against the plaintiff; (2) the criminal proceeding ended in the plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007). The Court granted summary judgment to Iurato on Mr. Lee's malicious prosecution claim due to insufficient evidence to support a finding that Iurato influenced or participated in the decision to institute criminal proceedings without probable cause. SJ Op. 17-18.

In light of the Court's decision to reinstate the fabrication claim against Iurato, genuine issues of material fact necessarily exist as to whether Iurato's participation in the initiation of Mr. Lee's criminal proceedings was without probable cause. *See Evans*, 2025 WL 2628093 at *5. Thus, Mr. Lee's motion for reconsideration to reinstate the malicious prosecution claim against Iurato is **GRANTED**. Counts I and VIII[2] of Mr. Lee's Complaint against Iurato are reinstated. Accordingly, Mr. Lee's request to reinstate Counts IV (civil conspiracy) and Counts IX, X, and XII (state law claims) against Iurato, which were initially dismissed because no claims against him remained, is also **GRANTED**. Mr. Lee's unexplained contention that reinstatement of the malicious prosecution claim against Iurato also requires reinstatement of Count III (coercion) is **DENIED**.

---

[2] Mr. Lee asks that upon reinstatement of Count I (malicious prosecution) against Iurato, Count VII (municipal liability against Paterson) be reinstated. Lee Br. 15. Since Count VII was never dismissed, the Court assumes that this is a typographical error and that Mr. Lee means to ask for reinstatement of Count VIII (state law malicious prosecution).

5

## IV. REID'S MOTION

Defendant Raymond Reid moves for reconsideration on three grounds. First, Reid argues that the record is "devoid of any material facts which could lead a jury to believe either that Defendant Reid acted recklessly and with deliberate indifference to Plaintiffs' constitutional rights, or that Defendant Reid was acting in a supervisory fashion in the investigation at hand." Reid Mot. 10. Second, Reid argues that because the Court granted qualified immunity as to some of the claims against him, qualified immunity further protects his actions as to the remaining claims. Reid Mot. 10-11. Third, Reid suggests that Defendant Stell's untimely passing is a material change in the factual landscape, such that a verdict against Reid "would effectively impose liability on him for actions he neither directed nor controlled." Mot. 13.

### A. Reid's Supervisory and Civil Rights Conspiracy Liability

At the onset, Reid's entire argument is an impermissible attempt to take another bite at the apple. In essence, Reid quibbles with the proposition that a jury could reasonably determine that his role as a "step on co-defendant Reyes' administrative ladder to submitting a report" would support supervisory or civil conspiracy liability. Reid Mot. 8. Reid also complains that "the Court has failed to establish that Defendant Reid was a supervisor." *Id.* 7. But that is not the Court's role at summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (establishing that "[t]he *movant* has the burden of showing that there is no genuine issue of fact" (emphasis added)). Instead, the Court evaluates whether there exists record evidence from which a juror could conclude that Reid acted recklessly or with deliberate indifference to Plaintiffs' constitutional rights. SJ Op. 21; *see, e.g., A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (reversing grant of summary judgment on a supervisory liability claim where the plaintiff presented sufficient record evidence in the form of notice to the supervisor and the supervisor's failure to act); *Nudleman v. Borough of Dickson City Police Dep't*, No. 3:05-cv-01362, 2007 WL 3275259, at *14 (M.D. Pa. Nov. 6, 2007) (denying summary judgment due to record evidence pointing to both the supervisor's personal involvement as well as his awareness of disputes about improper procedures).

As the Court noted in the SJ Opinion, Plaintiffs identify several facts, which Reid conveniently omitted in his brief, that further undergird the basis for supervisory liability: Reid's awareness and dismissal of James Thompson's eyewitness report as it relates to negligent supervision; Reid's role in reviewing investigative reports; and Reid's handwritten notes identifying concerns about the evidence. SJ Op. 21-22; Reid Opp. 5-10, Kelly ECF No. 301, Lee ECF No. 270. Since these issues would be sufficient to allow a "rational trier of fact to find for the non-moving party," the Court properly denied summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Qualified Immunity

Next, Reid argues that because the Court granted summary judgment on some counts against him, all of Reid's acts were protected by qualified immunity. Reid Mot. 10-12. That is not how qualified immunity works. Qualified immunity is determined on a claim-by-claim basis. *See Behrens v. Pelletier*, 516 U.S. 299, 312 (1999) (explaining that qualified immunity "is a right to immunity *from certain claims,* not from litigation in general" (emphasis in original)). A defendant who has qualified immunity for one claim does not necessarily have qualified immunity for other claims, even when those claims involve overlapping facts, because the legal standards applicable to each substantive violation may differ. *See, e.g., Hicks v. City of Phila.*, 2025 WL 1448205, at *8-9, 14 (E.D. Pa. May 20, 2025) (granting qualified immunity as to a *Brady* claim but denying qualified immunity as to a *Dennis* claim predicated on the same conduct and declining to adopt a "conduct-centric" theory of qualified immunity). For example, not every right is clearly established at the same time, even when both rights protect against the same conduct by the officer. *See Thomas v. City of Phila.*, 290 F. Supp. 3d 371, 382-83 (E.D. Pa. 2018) ("It would be strange to say that right X is clearly established just because right Y is clearly established and happens to prohibit the same conduct."). On this basis alone, reconsideration is improper because Reid's legal rationale is defective. Furthermore, summary judgment on qualified immunity grounds is improper because there are genuine issues of material fact as to whether Reid was deliberately indifferent to the "red flags" identified by his subordinate officers. SJ Op. 21-22; *see Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001) ("Because there is a genuine issue of fact as to whether [the supervisor] was deliberately indifferent, she has not carried her burden to establish that she is entitled to such immunity.").

### C. Defendant Stell's Death

Finally, Reid argues that Stell's death is a factual development requiring reconsideration. Reid claims that the "death of the actual investigative supervisor materially alters the factual context" and "would effectively impose liability on him for actions he neither directed nor controlled." Reid Mot. 13. Where a motion to reconsider is based on new evidence, (1) the evidence must be material, (2) the exercise of reasonable diligence must not have discovered the evidence, and (3) the evidence must be outcome-determinative. *Brown v. Mace-Liebson*, 779 F. App'x 136, 142 (3d Cir. 2019) (citing *Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 264 F.3d 302, 309-10 (3d Cir. 2001)). Reid failed to show that Stell's death is material or outcome determinative, especially since Stell's death does not impact any of the evidence of Reid's own misconduct. SJ Op. 7, 21-22; *see Phoenix Canada Oil Co. v. Texaco, Inc.*, 842 F.2d 1466, 1475 (3d Cir. 1988) (affirming denial of motion to reconsider where the new evidence was immaterial). Similarly, Reid fails to identify any reason why a limiting instruction to the jury would not resolve any confusion. *See Smith v. Arizona*, 602 U.S. 779, 818 (2024) (Alito, J., concurring) (noting "only one situation in which a limiting instruction is insufficient," which involves extrajudicial, incriminating statements of a non-testifying criminal codefendant). Accordingly, Stell's passing does not require reconsideration.

After evaluating all of Defendant Reid's arguments, the Court **DENIES** Reid's motion for reconsideration.

## V.    PATERSON'S MOTION

Paterson brings two bases for reconsideration. First, Paterson argues that the Court improperly considered newspaper articles discussing the Paterson Police Department's culture of impunity, without which there would be no genuine dispute of material fact as to the *Monell*, New Jersey Civil Rights Act, and negligent supervision claims. Paterson Mot. 5. Second, Paterson argues that the Court improperly imputed liability for state-law negligence or gross negligence claims to it under a *respondeat superior* theory. *Id.* 6-7.

### A.    The Court's Consideration of Newspaper Articles

Paterson argues that manifest injustice will result from the Court's consideration of newspaper articles under the residual hearsay exception, Fed. R. Evid. 807. *Id.* 5. Paterson disagrees with the Court's invocation of *Thomas v. City of Phila.*, No. 17-cv-04196, 2019 WL 4039575 (E.D. Pa. Aug. 27, 2019). *Id.* 3-4. In *Thomas*, the court referenced newspaper articles in light of other evidence, including an expert opinion. *Thomas*, 2019 WL 4039575, at *19. According to Paterson, absent the Court's consideration of newspaper articles, "there are no other links to make a chain referenced by the *Thomas* Court" supporting a culture of impunity at the Paterson Police Department. Paterson Mot. 5. As the Court explains below, this argument does not meet the high bar for reconsideration.

At the onset, the SJ Opinion fully discusses arguments for and against considering the newspaper articles, so the issue was not overlooked. *See* SJ Op. 27-28. By requesting "the Court revisit the doctrines' application to the facts here," Paterson Mot. 3, Paterson is merely "advanc[ing] the same arguments" it raised—and the Court considered—in the SJ Opinion. *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010). Paterson effectively concedes that it wants another bite at the apple, stating that "the City does not dispute the findings or reasoning of the *Thomas* Court, or the existence of F.R.C.P. [sic] 807," as well as the "precedent in this Circuit" for considering newspaper articles at summary judgment. Paterson Mot. 1, 3. Apart from disagreeing with the Court's invocation of *Thomas*, Paterson fails to identify any "indisputable" error barring the Court's invocation of the residual exception. *See, e.g., Teri Woods Pub., L.L.C. v. Williams*, No. 12-cv-04854, 2013 WL 6388560, at *3 (E.D. Pa. Dec. 6, 2013) (holding that reconsideration was unwarranted when the party that originally prevailed "raise[d] colorable arguments").

Moreover, the Court's reliance on *Thomas v. City of Philadelphia* is not a clear error of law. Paterson claims that because Plaintiffs did not rely on an expert supporting the existence of a culture of impunity, unlike in *Thomas*, there was an insufficient basis for the Court to consider the newspaper articles. Paterson Mot. 3-5. However, *Thomas* did not hold that expert testimony was necessary—only that the court could consider newspaper articles in light of "other evidence presented," which can (but does not have to) include expert opinions. *Thomas*, 2019 WL 4039575, at *19. The "general rule" remains that "expert testimony not only is unnecessary but indeed may properly be excluded in the discretion

of the trial judge," particularly where the jury is "as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation." *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962); *see also Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 415-16 (3d Cir. 1999) (affirming a denial of summary judgment on this basis). Additionally, the existence of other sufficient record evidence is an independent basis for denying summary judgment to Paterson, particularly when viewed in a light most favorable to the Plaintiffs as non-movants. SJ Op. 24-26 (identifying only "[r]epresentative examples" of deposition testimony, including of defendants in this case, alongside declarations); *see Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir. 2000) (en banc) (stating that the Third Circuit "may affirm the District Court on any grounds supported by the record").[3]

Since there is legal support for the Court's decision, Paterson's motion for reconsideration is **DENIED** as to all claims resting on the consideration of newspaper articles.[4]

## B. *Respondeat Superior* Liability for State-Law Negligence Claims

Paterson failed to meet its burden to show manifest injustice resulted from the Court's denial of summary judgment on Plaintiffs' negligence-based state law claims. As its only basis for reconsideration of this holding, Paterson asserts that "no matter what version of facts are at issue in the record . . . the issues are not material." Paterson Mot. 6. But the Court previously considered arguments and record evidence as to Plaintiffs' negligence claims and concluded that there were genuine issues of material fact precluding summary judgment. SJ Op. 23-27 (discussing a litany of facts supporting Plaintiffs' claims that Paterson acted negligently, or grossly so, in failing to address the Paterson Police Department's culture of impunity); *id.* 31-32 (rejecting Defendants' arguments). There is ample legal support for declining summary judgment in negligence cases based on issues of material fact, and Paterson failed to meet its burden to identify any binding case law to the contrary. *See, e.g., Ward v. Barnes*, 545 F. Supp. 2d 400, 420-21 (D.N.J. 2008) (denying summary judgment to state entities based on *respondeat superior* liability for a negligence claim); *Hayward v. Salem City Bd. of Educ.*, No. 14-cv-05200, 2016 WL 4744132, at *13 (D.N.J. Sept. 12, 2016) (denying summary judgment to the city based on *respondeat superior* where claims against the individual defendant survived). Because Paterson is impermissibly attempting "a second bite at the apple." *Gundell v. Sleepy's, LLC*, No. 15-cv-07365, 2023 WL 3983872, at *2 (D.N.J. June 13, 2023), its motion for reconsideration is **DENIED** as to the state-law negligence claims.

---

[3] The Court properly exercised its discretion in considering Plaintiffs' affidavits, notwithstanding that the identity of the affiants was previously unknown to Defendants. *See, e.g., Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 156 (3d Cir. 1995) (finding no abuse of discretion where the district court considered testimony notwithstanding the party's failure to disclose the witnesses' identities because such failure was harmless and not in bad faith).

[4] The Court did not admit the newspaper articles in the SJ Opinion, and it reserves decision on the admission of all evidence until the appropriate moment.

## VI. CONCLUSION

For the reasons discussed above, Plaintiffs' motions for reconsideration are **GRANTED IN PART AND DENIED IN PART.** Reconsideration and reinstatement is **GRANTED** as to: 1) Plaintiffs' fabricated confession claims against Reyes, Stell, Nieves, and Iurato; 2) Plaintiffs' deliberate deception claims against Reyes; 3) Mr. Lee's malicious prosecution, civil conspiracy, and state law claims against Iurato. Reconsideration is **DENIED** as to: 1) Plaintiffs' motions to reinstate the deliberate deception, malicious prosecution, and state law claims against Reid; 2) Mr. Lee's motion to reinstate the coercion claim against Iurato; 2) Reid's motion for reconsideration; 3) Paterson's motion for reconsideration. An appropriate order follows.

WILLIAM J. MARTINI, U.S.D.J.

**DATE:** October __, 2025